UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JAMES R. SADA,

                Plaintiff,

-vs-                                 Case No.  6:08-cv-1368-Orl-19GJK

CITY OF ALTAMONTE SPRINGS,
ROBERT C. MERCHANT, JR.,
ROBERT PELTON, BRIAN LYPSEY,
ROBERT SHAPIRO, KRISTOFFOR
TOMICH, TROY ANTOLIN, JOHN
DOE #1, JOHN DOE #2,

                Defendants.

_____

# ORDER

       This case comes before the Court on the following:

1.      Motions of Defendants Robert Pelton, Brian Lypsey, Robert Shapiro, Kristoffor Tomich, and Troy Antolin to Dismiss (Doc. Nos. 11-15, filed Aug. 20, 2008);[1]

2.      Motion of Defendants Robert C. Merchant and City of Altamonte Springs to Dismiss (Doc. No. 16, filed Aug. 20, 2008);

3.      Motion of Defendants Robert C. Merchant and City of Altamonte Springs to Strike Claims for Punitive Damages (Doc. No. 17, filed Aug. 21, 2008); and

4.      Response of Plaintiff to Defendants' Motions to Dismiss (Doc. No. 26, filed Sept. 4, 2008).

---

[1]      Defendants Robert Pelton, Brian Lypsey, Robert Shapiro, Kristoffor Tomich, and Troy Antolin filed nearly identical Motions which assert the same legal arguments for dismissal. The Court will cite only to the Motion of Robert Pelton when summarizing these Defendants' arguments, and it will refer to them collectively as "the officers."

**Background**

This lawsuit arises out of Plaintiff James R. Sada's allegedly unlawful arrest and detention while shopping at the Altamonte Springs mall with his family. Sada filed an eleven-count complaint against seven Altamonte Springs police officers (Defendants Robert Pelton, Brian Lypsey, Robert Shapiro, Kristoffor Tomich, Troy Antolin, "John Doe # 1," and "John Doe # 2"), the Altamonte Springs Chief of Police (Robert C. Merchant), and the City of Altamonte Springs. (Doc. No. 2, filed Aug. 11, 2008.) With the exception of the unnamed officers, all Defendants have filed Motions to Dismiss. The primary issue raised in these Motions is whether Sada meets the applicable pleading standards. (*See* Doc. Nos. 11-16.) Defendants also argue that qualified immunity applies and that Sada's claims are legally insufficient for various reasons. (*See id.*)

According to the Complaint, on March 21, 2007, Sada was shopping with his family at the Altamonte Springs mall when he "disciplined his son over a parenting issue." (Doc. No. 2 ¶ 25.) Although Sada did not hit his son, representatives at the Sears store became concerned and called the police. (*Id.* ¶¶ 26-27.) Sada then voluntarily left the mall and returned to the parking lot. (*Id.* ¶¶ 28-29.) While Sada was waiting for his family to finish shopping, officers Pelton and Shapiro pulled up to Sada, blocked his car, and detained Sada by preventing him from driving away. (*Id.* ¶¶ 30-31.) Sada asked if he was free to leave, and Pelton and Shapiro "indicated that Sada was being detained and was not allowed to leave." (*Id.* ¶ 32.) Officer Tomich then arrived, followed by Officer Lypsey who took charge of the scene. (*Id.* ¶¶ 34-36.)

Sada alleges that upon arrival Lypsey acted "belligerent" and believed that Sada was a "Hispanic male." (*Id.* ¶¶ 37-38.) Sada then explained to Lypsey that Sada was a retired police officer and knew the Chief of Police for Altamonte Springs. (*Id.* ¶¶ 39-40.) After hearing this,

Lypsey confered with "the officers and other off-duty officers" and concluded that he would teach Sada a lesson about "name drop[ping]." (*Id.* ¶ 41.) Lypsey then ordered Atolin to arrest Sada for disorderly conduct on the premises of an establishment and battery of a minor child, in violation of sections 509.143 and 784.03 of the Florida Statutes, respectively. (*Id.* ¶ 42.) Antolin, Tomich, and Shapiro grabbed Sada's arm and placed in him in handcuffs. (*Id.* ¶ 50.) While at the scene, and apparently following the arrest, Officer Shapiro and "other officers" instructed several witnesses to give witness statements that reflected Lypsey's version of events. (*Id.* ¶¶ 46-48.) Sada concedes that he "used some profanity while being detained in the mall parking lot," but he maintains that he did not incite unlawfulness or interfere with a police officer. (*Id.* ¶¶ 43-45.)

Following the arrest, Sada was taken to jail and incarcerated overnight due to the domestic battery charges. (*Id.* ¶ 54.) He was released at 4:00 pm the next day following a preliminary hearing. (*Id.* ¶ 57.) Based on the witness statements and affidavits prepared by the responding officers, the State's Attorney filed charges against Sada for disorderly conduct under section 877.03 of the Florida Statutes. (*Id.* ¶ 60.) Sada responded by obtaining counsel and moving to dismiss the charges. (*Id.* ¶ 62.) The State's Attorney consented to Sada's Motion, and the trial court promptly dismissed the charges with prejudice. (*Id.* ¶¶ 63-64.)

At some unspecified point after the arrest, but before the "criminal action being dismissed by the trial court," John Doe #1 and John Doe #2 "discussed with local merchants the arrest of Sada for alleged disorderly conduct and battery of a minor child, and said, among other things, '[w]e showed him about name dropping.'" (*Id.* ¶ 66.) Sada contends that the John Does "represented to

the business owner"[2] that Sada had committed the crimes of disorderly conduct and domestic battery on a minor child.  (*Id.* ¶ 67.)

Based on these allegations, Sada asserts eleven causes of action.  The first is entitled: "Violation of Constitutional Rights Under the Fourteenth Amendment to the United States Constitution – 42 U.S.C.S. § 1983 (Against City, Officers)."  (*Id.*  ¶¶ 71-95.)  In this Count, Sada alleges that he possessed a "clear legal right to free speech pursuant to the First Amendment of the United States Constitution" and a "clear legal right to be free from unlawful search and seizure pursuant to the Fourth Amendment of the United States Constitution."  (*Id.* ¶¶ 76, 80.)  Sada contends that the "City and Officers in arresting Sada for alleged disorderly conduct interfered with Sada's protected interest in free speech."  (*Id.* ¶ 77.)  He alleges that the "Officers, as employees of the City," seized and arrested him without legal authority or probable cause, thereby violating the Fourth Amendment.  (*Id.* ¶ 83.)  In addition, Sada contends that the "City's violation caused Sada harm to his good name, reputation, honor and integrity."  (*Id.* ¶¶ 84-85.)  Sada also alleges that the "City is a local government" and that the "Officers are private citizens" and "City employees."  (*Id.* ¶¶ 86-88.)

Sada next brings a series of claims for state law torts:

• Count II: "False Imprisonment/False Arrest" against "City and Officers."  (*Id.* ¶¶ 96-103.)

• Count III: "Battery" against "City, Antolin, Tomich and Shapiro." (*Id.* ¶¶ 104-10.)

• Count IV: "Intentional Infliction of Emotional Distress" against "City, Officers, John Doe #1 and John Doe #2."  (*Id.* ¶¶ 111-21.)

---

[2]       Sada does not specify who "the business owner" is and whether he is included in the category of "local merchants" described in the previous sentence.

- Count V: "Slander" against "John Doe #1 and John Doe #2."  (*Id.* ¶¶ 122-31.)

- Count VI: "Slander Per Se" against "John Doe #1 and John Doe #2."  (*Id.* ¶¶ 132-37.)

- Count VII: "Libel Per Se" against "City, Chief, Officer [sic], John Doe #1 and John Doe #2." (*Id.* ¶¶ 138-44.)

- Count VIII: "Malicious Prosecution" against "City, Chief and Officers."  (*Id.* ¶¶ 145-52.)

- Count IX: "Negligent Hiring" against "City." (*Id.* ¶¶ 153-61.)

- Count X: "Negligent Training and Supervision" against "City, Chief and Lypsey." (*Id.* ¶¶ 162-67.)

- Count XI: "Negligent Retention" against "City and Chief." (*Id.*  ¶¶ 168-78.)

Officers Pelton, Lypsey, Shapiro, Tomich, and Antolin filed Motions to dismiss the claims against them.  Concerning the state law claims, the officers first argue that they enjoy statutory immunity under section 768.28(9)(a) of the Florida Statutes to the extent that Sada fails to allege that their conduct was undertaken with bad faith or malice.  (Doc. No. 11 at 4-5.)  They note that the intentional infliction of emotion distress and malicious prosecution claims are the only claims in which Sada alleges that the officers acted with malice.  (*Id.*)  The officers then argue, as a general matter, that Sada has not specified whether he sues them in their individual or official capacities. (*Id.* at 5.)  Assuming the suit is against the officers in their individual capacities, Sada has not met the heightened pleading standard required for section 1983 claims.  (*Id.* at 5-6.)  Further, they argue, to the extent Sada has pled specific facts regarding the officers' conduct, qualified immunity applies because Sada has not established a violation of any clearly established constitutional rights.  (*Id.* at 7-9.)  Finally, the officers argue that Sada's claims for punitive damages fail because he has not

alleged the level of malice required to support an award of punitive damages under section 1983 or Florida tort law.  (*Id.* at 9-11.)

Chief Merchant and the City also filed a Motion to dismiss.  In the Motion, they first argue that Sada's section 1983 claim against the City and Chief Merchant (assuming the claim is against Merchant in his official capacity) fail because Sada has not alleged, even in conclusory terms, that the alleged constitutional violations occurred as the result of a policy or custom.  (Doc. No. 16 at 6-7.)  Merchant and the City also argue that Sada has failed to allege cognizable constitutional violations to support his section 1983 claim.  (*Id.* at 7-10.)  Next, Merchant and the City contend that Sada has failed to comply with Florida's statutory notice provision for bringing Florida state law claims against a municipality.  (*Id.* at 10-11.)  In addition, Merchant and the City argue that: Merchant has statutory immunity from Sada's false arrest claim; that the battery claim fails as a matter of law because it is based on touching incidental to an arrest; that the intentional infliction of emotional distress claim and malicious prosecution claim cannot be maintained against the City because municipalities cannot be liable for an employee's malicious behavior; that Florida law bars separate claims of slander that are based on the announcement of an arrest, even if unlawful; and that negligence claims cannot be maintained against the City for negligent hiring, training, or retention because these are discretionary functions protected by sovereign immunity.  (*Id.* at 10-17.) Merchant and the City also filed a Motion to strike Sada's claims for punitive damages in which they argue that punitive damages cannot be awarded against municipalities for any of the claims in this case.  They also argue that Sada's allegations are insufficient to support an award of punitive damages against Merchant.  (Doc. No. 17 at 1-3.)

**Standard of Review**

For the purposes of a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences drawn from such pleading. *E.g.*, *Jackson v. Okaloosa County*, 21 F.3d 1531, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (abrogated on other grounds). The Court must limit its consideration to this pleading and the written instruments attached to it as exhibits. Fed. R. Civ. P. 12(d); *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007).

In this case, several pleading rules govern the sufficiency of Sada's claims. As a general matter, the Federal Rules of Civil Procedure require only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, despite this liberal pleading requirement, "a complaint must still contain either direct or inferential allegations respecting all material elements of a cause of action." *Kindred Hosp. E. LLC v. Blue Cross & Blue Shield of Fla., Inc.*, No. 3:05-cv-995, 2007 WL 601749, at *4 (M.D. Fla. Feb. 16, 2007) (quoting *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006)) (internal quotations omitted). Whether a complaint gives reasonable notice is a question of law. *Evans v. McClain of Ga.*, 131 F.3d 957, 964 n.2 (11th Cir. 1997).

Another general pleading standard is established by Rule 10(b) of the Federal Rules of Civil Procedure. According to the Rule, "[i]f doing so would promote clarity, each claim founded on a

separate transaction or occurrence--and each defense other than a denial--must be stated in a separate

count or defense." Fed. R. Civ. P. 10(b).

The Eleventh Circuit explained that Rules 8 and 10 work together:

> to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

*Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996) (quoting *T.D.S. v. Shelby Mut. Ins.*

*Co.*, 760 F.2d 1520, 1543 n. 14 (11th Cir. 1985) (Tjoflat, J., dissenting)).

If a violation of Rule 10(b) exists, a court may grant a motion to dismiss with leave to amend

or, "more properly perhaps, grant a motion for more definite statement pursuant to [Federal Rule of

Civil Procedure] 12(e)." *Veltmann v. Walpole Pharmacy, Inc.*, 928 F. Supp. 1161, 1164 (M.D. Fla.

1996).

Finally, a more stringent standard governs Sada's section 1983 claim.  The Eleventh Circuit

has established a heightened pleading standard in section 1983 cases where government officials are

sued in their individual capacities.  *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1366-67

(11th Cir. 1998).[3]  The Eleventh Circuit explained that qualified immunity represents the rule rather

---

[3]      The Supreme Court rejected a heightened pleading standard in section 1983 actions against municipalities.  *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993).  The Eleventh Circuit has clarified, "*Leatherman* overturned our prior decisions to the extent that those cases required a heightened pleading standard in § 1983 actions against entities that cannot raise qualified immunity as a defense." *Swann v. So. Health Partners, Inc.*, 388 F.3d 834, 838 (11th Cir. 2004); *see also Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1309 n. 6 (11th Cir. 2007) (Tjoflat, J., dissenting) ("The use of the so-called 'heightened pleading' requirement, though longstanding, continues to give rise to debate. Our cases on this topic are perhaps not the model of clarity, but at the very least, this circuit applies a heightened pleading standard in complaints alleging § 1983 claims against entities who may raise qualified immunity as (continued...)

than the exception. *Id.* at 1366 (citing *Lassiter v. Ala. A & M Univ. Bd. of Trs.*, 28 F.3d 1146, 1149 (11th Cir. 1994)).   Under the qualified immunity doctrine, "government officials performing discretionary functions are immune not just from liability, but from *suit*, unless the conduct which is the basis for suit violates 'clearly established [federal] statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   The court continued, "For a right to be 'clearly established,' previous case law must have developed it in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law."   *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Therefore, the court explained:

> [W]hile Federal Rule of Civil Procedure 8 allows a plaintiff considerable leeway in framing its complaint, this circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim. . . .   Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims. This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established right.

*Id.* at 1367. Thus, in a section 1983 action against an individual government official, a plaintiff must plead facts with sufficient particularity to overcome the official's qualified immunity. *See Kyle K.*, 208 F.3d at 944.

---

[3](...continued)
a defense (*e.g.*, government officials sued in their individual capacities).")"; *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000) (explaining that the heightened pleading standard still applies to Section 1983 suits against individual government officials).

**Analysis**

I.   **Pleading Standards**

    A.   **Failure to Specify Whether Claims are Brought Against Defendants in Their Official or Individual Capacity**

Sada commits one pleading error that affects both the state and federal claims: he does not specify whether the various defendants, with the exception of the City, are sued in their individual or official capacities.  Plaintiffs have a general "duty to make plain who they are suing and to do so well before trial." *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1047 (11th Cir. 2008) (quoting *Colvin v. McDougall*, 62 F.3d 1316, 1318 (11th Cir. 1995)) (internal quotation marks omitted).  "However, plaintiffs are not required to designate with specific words in the pleadings that they are bringing a claim against defendants in their individual or official capacities, or both." *Id.* (citing *Hobbs v. Roberts*, 999 F.2d 1526, 1529-30 (11th Cir. 1993)).  "Thus, while it is 'clearly preferable' that a plaintiff state explicitly in what capacity defendants are being sued, 'failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice.'" *Id.* (citing *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001)).

In this case, the distinction between an individual and official capacity suit is particularly important even at this early stage in the litigation.  If the claims against the officers and Merchant are brought against them in their individual capacities, Sada must satisfy a heightened pleading standard for his section 1983 claim, *GJR Invs., Inc.*, 132 F.3d at 1366-67, and the officers and Merchant will enjoy statutory immunity under section 768.28(9)(a) of the Florida Statutes from state law claims that do not involve malice or bad faith conduct.   If on the other hand these claims are brought against the officers and Merchant in their official capacities, then the claims are essentially against the City and subject to the federal and state rules regarding suits against a municipality. *E.g.*,

*City of Okla. v. Tuttle*, 471 U.S. 808, 819 (1985) (municipalities are not liable under section 1983 on a *respondeat superior* basis: the constitutional violations must be the result of a municipal policy); Fla. Stat. § 768.28(6)(a) (plaintiffs bringing Florida state law claims against a state agency must first present the claim in writing to the agency).

The confusion caused by Sada's omission is perhaps best demonstrated by the fact that Defendants make alternative arguments in their Motions to address both the possibility that they are sued individually and the possibility that they are sued in their official capacities. Their uncertainty is not surprising. For instance, the Complaint specifies that the "officers" are "private citizens" but then states that the officers took certain wrongful actions as "employees of the city." (Doc. No. 2 ¶¶ 81-82, 87.) Further, Sada seeks punitive damages against all parties, including the City, despite the rule that only individuals may be liable for punitive damages in section 1983 suits. *Kyle K.*, 208 F.3d at 944 (a demand for punitive damages against a party may be an indication of whether that party is sued individually); *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 269-71 (1981) (explaining that punitive damages are unavailable against municipalities in section 1983 suits). To his credit, Sada does specify in his Response to Defendants' Motions that he is suing Tomich, Pelton, Lypsey, Shapiro, Antolin, John Doe #1, and John Doe #2 in their individual capacities. (Doc. No. 26 at 10-11.) Nevertheless, this clarification should be made in the pleadings, not in a Response to a Motion. Moreover, Sada still fails to explain whether he sues Merchant in his official or individual capacity.

Because Defendants are left without proper notice of the claims against them, Sada's Complaint appears to violate Federal Rule of Civil Procedure 8(a)(2). The Eleventh Circuit has explained that the proper course of action is not to deny relief outright, but instead to require the

plaintiff to give proper notice of the capacity in which he or she sues the defendants. *Young Apartments, Inc.*, 529 F.3d at 1047. This clarification will allow Defendants to formulate defenses in response to the actual claims against them. Accordingly, Sada's claims against Tomich, Pelton, Lypsey, Shapiro, Altonlin, John Doe #1, John Doe #2, and Merchant are dismissed without prejudice and must be re-pled in a manner that gives these Defendants notice of whether Sada is suing them in their individual or official capacities.

**B.      Heightened Pleading Standard for Sada's Section 1983 Claims**

Assuming that Sada is suing them in their individual capacities, Chief Merchant and Officers Tomich, Pelton, Lypsey, Shapiro, and Altonlin argue that Sada has failed to meet the heightened pleading standard governing his section 1983 claim. The Court agrees, and it will address this issue because it may arise when Sada re-pleads his claims.

The Eleventh Circuit "has tightened the application of Rule 8 with respect to [section] 1983 cases in an effort to weed out nonmeritorious claims, requiring that a [section] 1983 plaintiff allege with some specificity the facts which make out its claim." *GJR Invs., Inc.*, 132 F.3d at 1367. Specifically, the allegations in the Complaint should be precise enough to allow the Court to make a threshold determination whether the officers sued in their individual capacities are entitled to qualified immunity. *See id.* This determination requires the Court to compare the allegations against each individual defendant to the facts of cases in which courts have identified constitutional violations. *E.g.*, *Post v. City of Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993). Vague allegations and legal conclusions do not make this task possible. *GJR Invs., Inc.*, 132 F.3d at 1367.

In this case, two sections of Sada's Complaint contain facts relevant to the qualified immunity inquiry.  In the background section, Sada describes the sequence of events that occurred on March 21, 2007.  The alleged role of each officer is as follows:

• Lypsey was the ranking officer on scene.  (Doc. No. 2 ¶ 35.)  He was "belligerent" and initially believed that Sada was Hispanic.  (*Id.* ¶¶ 37-38.)  After Sada suggested that Lyspey confer with the Chief of Police, Lypsey ordered Antolin, Tomich, and Shapiro to arrest Sada as a lesson about name dropping.  (*Id.* ¶¶ 39-41.)  Sada does not allege that Lypsey touched him at any point.  Sada implies, but does not explicitly state, that Lypsey instructed Shapiro and "other officers" to instruct witnesses on the facts they should include in their statements. (*See id.* ¶ 48.)

• Antolin arrived on the scene at some unspecified point.  He arrested Sada at Lypsey's command, and he "grabbed Sada by his arms and placed him [in] hand-cuffs."  (*Id.* ¶¶ 49-50.)

• Shapiro arrived on the scene after receiving the report from Sears' employees regarding Sada's conduct in the store.  (*Id.* ¶ 29.)  He blocked Sada's car and detained Sada.  (*Id.* ¶¶ 30-32.)  Shapiro was among the officers who arrested Sada and  "grabbed Sada by his arms and placed him [in] hand-cuffs."  (*Id.* ¶ 50.)  Sada alleges that Shapiro also told witnesses what facts they should write in their statements.  (*Id.* ¶¶  47-48.)

• Pelton arrived on the scene with Shapiro and blocked Sada's car.  (*Id.* ¶¶ 30-32.)  There are no other specific allegations regarding Pelton.

•   Tomich arrived on the scene after Pelton and Shapiro but before Lypsey.  (*Id.* ¶ 34.)  Tomich was among the officers who arrested Sada and "grabbed Sada by his arms and placed him [in] hand-cuffs."  (*Id.* ¶ 50.)

•   It does not appear that Sada is suing Merchant under section 1983.  Sada does not allege that Merchant had a specific role in the events of March 21, 2008, and Merchant's name does not appear in the section 1983 Count of the Complaint.  However, Sada generally alleges that Merchant is responsible for employing and training the officers who arrested Sada. (*Id.* ¶¶ 6-8.)

•   All of the officers made affidavits in support of the arrest.  (*Id.* ¶ 59.)  None of the affidavits are alleged to be false.  In addition, Sada alleges that the officers instructed witnesses to prepare statements that reflected Lypsey's "belief as to the circumstances rather than as [sic] the witnesses' individual perceptions of the facts surrounding the incident."  (*Id.* ¶ 48.)  However, Sada does not allege that the witness statements were false.

In the "Count I" section the Complaint, Sada makes a number of general allegations and legal conclusions.  For instance, he alleges that he possessed a "clear legal right to free speech pursuant to the First Amendment of the United States Constitution"  and a "clear legal right to be free from unlawful search and seizure pursuant to the Fourth Amendment of the United States Constitution."  (*Id.* ¶¶  76, 80.)  Sada contends that the "City and Officers in arresting Sada for alleged disorderly conduct interfered with Sada's protected interest in free speech."  (*Id.* ¶ 79.)  He also alleges that the "Officers, as employees of the City," seized and arrested him without legal authority or probable cause, thereby violating the Fourth Amendment.  (*Id.* ¶ 83.)  In addition, Sada contends that the "City's violation caused Sada harm to his good name, reputation, honor and

integrity." (*Id.* ¶¶ 84-85.)   Except for the City, no Defendant is mentioned specifically in this section.

These allegations are insufficient to meet the heightened pleading standard because they do not allow the Court to evaluate the sufficiency of Sada's constitutional claims.   Although Sada pleads some specific facts in the background section of his Complaint, followed by allegations of constitutional violations in the Count I section, he omits key pieces of information that would allow the Court to conduct a qualified immunity analysis.   For instance, Sada generally alleges that his First Amendment rights were violated by the arrest, but it is not clear how Sada was engaging in protected speech, nor is it clear how his right was actually infringed.   *C.f.*, *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461-62 (1987) (speech critical of police officers is protected by the First Amendment); *Bennett v. Hendrix*, 423 F.3d 1247, 1255 (11th Cir. 2005) (police may not retaliate against private citizens for the exercise of their First Amendment rights).   Further, Sada cannot pursue constitutional claims based on his arrest if the officers had "arguable probable cause" to make the arrest.   *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997).   Sada alleges in conclusory fashion that the officers lacked probable cause, but he does not explain what facts defeat probable cause.   This is an essential part of his claim and must be alleged with specificity.   *Compare Wright v. Burkhead*, No. 6:07-cv-2039-Orl-19KRS, 2008 WL 423452, at * 4 (M.D. Fla. Feb. 13, 2008) ("Plaintiff merely asserts that he was arrested 'without probable cause' . . . . Absent more specific facts, this claim fails to meet the heightened pleading standard for Section 1983 claims against individual officers." (citation omitted)), *with Gordon v. Beary*, No. 6:08-cv-73-Orl-19KRS, 2008 WL 3258496, at *10 (M.D. Fla. Aug. 6, 2008) ("The Amended Complaint explains that Wilcox had no probable cause to arrest Gordon because he manufactured probable cause by falsely identifying

the voice on a recording as Gordon's.").  Finally, Sada claims that Defendants are constitutionally prohibited from damaging his good name, integrity, honor, and reputation, but the Supreme Court has explained unequivocally that the Constitution affords no such protection.  *Siegert v. Gilley*, 500 U.S. 226, 232-35 (1991).

Accordingly, if Sada wishes to sue Chief Merchant and Officers Tomich, Pelton, Lypsey, Shapiro, and Antolin in their individual capacities, he will need to allege facts with sufficient specificity to satisfy the Eleventh Circuit's heightened pleading standard.   Put differently, Sada must allege specific facts, within the parameters of Federal Rule of Civil Procedure 11, that explain exactly how each defendant violated Sada's clearly established constitutional rights.  The current Complaint is deficient in this respect.

## II.    Notice Requirement for Suing Municipalities

Florida law requires that a plaintiff who sues a municipality under Florida law must first give notice of his or her claims to the municipality.  Fla. Stat. § 768.28(6)(a) ("An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency . . . .").  If the plaintiff later brings suit, he or she is required to allege compliance with this statute in order to state a claim upon which relief may be granted.  *Diversified Numismatics, Inc. v. City of Orlando*, 783 F. Supp. 1337, 1347 (M.D. Fla. 1990) (citing *Commercial Carrier Corp. v. Indian River County*, 371 So. 2d 1010, 1022-23 (Fla. 1979)).  Sada has failed to allege that he gave notice to the City.  Accordingly, the claims against the City in Counts II, III, IV, VII, VIII, IX, X, and XI must be dismissed without prejudice.

III.    **Legal Sufficiency of the Claims**

Defendants make a number of arguments for dismissal based on the legal sufficiency of Sada's federal and state claims.  *See supra* pp. 5-6.  However, as previously explained, Sada has failed to plead his claims with sufficient specificity for this Court to determine whether he has adequately stated his claim, with the sole exception of his section 1983 claim against the City.[4] Because this claim remains pending, the Court will analyze the City's argument for its dismissal.

The City contends that Sada's claim must be dismissed because it does not meet the threshold requirement of establishing that Sada's injury was the result of an official "custom or policy." (Doc. No. 16 at 6.)  To " impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004).  The Supreme Court has permitted five methods of establishing the existence of an official custom or policy sufficient to impose municipal liability under section 1983: (1) actions of municipal legislative bodies, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); (2) agencies exercising delegated authority, *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 661 (1978); (3) individuals with final decision-making authority, *Pembaur*, 475 U.S. at 483; (4) policies of inadequate training or supervision, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989); and (5) custom.  *Pembaur*, 475 U.S. at 481-82, 484 n.10.  Erwin Chermerinsky, Federal Jurisdiction § 8.5 (4th ed. 2003).

---

[4]    After Sada amends his Complaint, Defendants are free to reassert these grounds for dismissal if appropriate.  The Court expresses no opinion on their merit.

Sada alleges that the City did not adequately train or supervise its police officers, and he further alleges that City was aware that Lypsey had a record of "inappropriate conduct as a law enforcement officer." (Doc. No. 2 ¶¶ 10-11.)   However, under the case law, Sada must also allege that the City was deliberately indifferent to his constitutional rights by maintaining this policy. *See McDowell*, 392 F.3d at 1290.  He has not explicitly done so, nor has he alleged facts from which deliberate indifference could be inferred.  Accordingly, Sada's allegations are insufficient to state a claim for municipal liability under section 1983. *Hung Phan v. City of St. Petersburg, Fla.*, No. 8:06-cv-01818-T-17-TGW, 2007 WL 1225380, at *4 (M.D. Fla. Apr. 25, 2007).

## IV.   Punitive Damages

Finally, all Defendants argue that punitive damages are unavailable.  The City argues that no punitive damages may be awarded against it for Sada's section 1983 and Florida state law claims, while the other Defendants acknowledge that punitive damages may be awarded against them in some circumstances but argue that Sada has not alleged sufficiently malicious behavior to support punitive damages in this case.  (Doc. No. 11 at 10-11; Doc. No. 17 at 1-3.)

Because punitive damages are categorically unavailable against a municipality in a section 1983 claim, *City of Newport*, 453 U.S. at 271, and Florida law bars the recovery of punitive damages against a municipality for state law claims, Florida Statute § 768.28(5), the Court will strike Sada's request for punitive damages against the City.  However, the remaining Defendants' arguments for striking Sada's request for punitive damages depend on the sufficiency of Sada's factual allegations against them.  Sada has been instructed to amend his Complaint with greater factual specificity.  It is possible that Sada will amend his Complaint in a manner that complies with the case law

governing punitive damages,[5] thereby mooting these Defendants' arguments.  Therefore, the Court will deny their request to strike without prejudice to reassertion once Sada amends his Complaint.

**Conclusion**

The Court **GRANTS in part** and **DENIES in part** the Motions of Defendants Robert Pelton, Brian Lypsey, Robert Shapiro, Kristoffor Tomich, and Troy Antolin to Dismiss (Doc. Nos. 11-15, filed Aug. 20, 2008), the Motion of Defendants Robert C. Merchant and City of Altamonte Springs to Dismiss (Doc. No. 16, filed Aug. 20, 2008), and the Motion of Defendants Robert C. Merchant and City of Altamonte Springs to Strike Claims for Punitive Damages (Doc. No. 17, filed Aug. 21, 2008).  Plaintiff's Complaint (Doc. No. 2, filed Aug. 11, 2008) is **DISMISSED without prejudice**.  Plaintiff has **ten (10) days** from the date of this Order to amend his Complaint in manner consistent with this Order.  Failure to comply with this Order may result in dismissal with prejudice and without further notice.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on November 24, 2008.

**PATRICIA C. FAWSETT, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[5]     For instance, punitive damages are available in section 1983 cases only when an individual's conduct is "[m]otivated by evil motive or intent, or when it involves a reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 46 (1983).  Florida law requires a similar level of malice for punitive damages based on state law tort claims.  *Tiger Point Golf & Country Club v. Hipple*, 977 So.2d 608, 611 & n.4 (Fla. 1st DCA 2007).

Copies furnished to:

Counsel of Record